In the Matter of the Appraisal of the Estate of JOHN H. BEACH, Deceased, under the Transfer Tax Act.

CAROLINE A. JAMES, Appellant; THE COMPTROLLER OF THE CITY OF NEW YORK, Respondent.

1. TRANSFER TAX ACT — EXEMPTION BASED ON "MUTUALLY ACKNOWLEDGED RELATION OF PARENT." Within the provision of the Transfer Tax Act (L. 1892, ch. 399, § 2) which exempts from taxation transfers of real property, and of personal property not exceeding $10,000 in value, passing to "any person" to whom the decedent, etc., "for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of parent," a testator may sustain to a person not of his blood, and not legally adopted, the relation of parent so as to entitle such person to the benefit of the exemption.

2. ILLEGITIMATE CHILDREN. The exemption based upon the "mutually acknowledged relation of parent" is not limited to illegitimate children, but extends as well to persons not of the blood of a testator, between whom and the testator the relation of parent and child has been mutually recognized for ten years prior to the testator's death.

3. ADULTS. The fact that a person was at the inception of the mutually acknowledged relation an adult, does not exclude him from the benefit of the exemption.

*Matter of Beach,* 19 App. Div. 630, reversed.

(Argued October 18, 1897; decided November 23, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 20, 1897, which affirmed so much of an order of the surrogate of the county of New York as assessed and fixed a transfer tax upon the interest of Caroline A. James in the estate of John H. Beach, deceased.

The facts, so far as material, are stated in the opinion.

*Edward W. Sheldon* for appellant. The testator, though a stranger in blood to the appellant, having for more than ten years prior to his death stood in the mutually acknowledged relation of her parent, the personal property bequeathed to her by his will is subject to a transfer tax of only one per cent, and the real property devised to her is exempt from taxation. (*In re Miller,* 110 N. Y. 216; *In re Nichols,* 91 Hun, 140; *In re Moore,* 90 Hun, 162; *In re Butler,* 58 Hun, 400; *In re Spencer,* 4 N. Y. Supp. 395; *In re Capron,* 10 N. Y. Supp. 23; *In re Sweetland,* 20 N. Y. Supp. 310; *In re Wheeler,* 1 Misc. Rep. 450; *In re Thomas,* 3 Misc. Rep. 388; *In re Moulton,* 11 Misc. Rep. 694; *In re Stilwell,* 34 N. Y. Supp. 1123.)

*Emmet R. Olcott* for respondent. The provision of the statute relating to persons to whom the decedent stood " in the mutually acknowledged relation of a parent," covers only the case where an illegitimate child has been recognized by its parent, and such recognizance has been mutual and has continued for ten years or more. (L. 1892, ch. 399; *In re Hunt,* 86 Hun, 232.)

ANDREWS, Ch. J. John H. Beach, a resident of the city of New York, died September 28, 1893, leaving a will dated

February 12, 1892, and a codicil thereto dated February 15, 1892, by the latter of which instruments he devised and bequeathed to the appellant, Caroline A. James, his residence in said city of the value of about $100,000 and the furniture of the value of $4,536.75. The appellant is the wife of David H. James, and on the appraisal of the property of the testator for the purpose of taxation under the Transfer Tax Act (Chap. 399 of the Laws of 1892) she claimed that the property given to her by the will of Mr. Beach was exempt from taxation under that provision in section two of the act which exempts from such taxation real property, and also personal property not exceeding ten thousand dollars in value, passing by will, deed or gift to "any person to whom any such decedent, grantor, donor or vendor, for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent." The testator was at the time of his death a widower, sixty-eight years of age, having no children or lineal descendants. He had been the intimate friend and adviser of the husband of Mrs. James from his boyhood. Mrs. James was about twenty-five years younger than the testator, and was not related to him by blood or marriage. For the purpose of this case it is sufficient to state that in 1881, according to the uncontradicted evidence, the appellant and her husband, at the solicitation of the testator (he then being a widower), became members of his family under an oral understanding between them that Mrs. James should be regarded and treated by him as a daughter, and that she should regard him as a parent, and render such services as a daughter would naturally render to a father. In 1882, the testator, upon consultation with Mrs. James, purchased the house and lot devised to her by the will, and thereafter, until his death, he, with Mrs. James and her husband occupied the house as one family. Mrs. James managed the affairs of the household, waited upon and nursed the testator when ill, and he on his part defrayed the household expenses. The testator introduced the appellant as his daughter, and, in short, the evidence is, that from 1881 until the death of the testator in 1893, the

assumed relation of parent and child continued between the testator and Mrs. James without interruption, and was publicly acknowledged, each rendering to the other the reciprocal duties and services incident to the actual relation of parent and child. It is indeed insisted in behalf of the comptroller of the city of New York that the order below may be affirmed on the ground that the surrogate may have found the non-existence of any mutually acknowledged relation of parent and child between the testator and Mrs. James, as a matter of fact. But the evidence on that question did not admit of opposing inferences, and it is plain from a perusal of the record that the surrogate held himself concluded by the decision of the General Term in the first department in *Matter of Hunt* (86 Hun, 232), to the effect that the clause above quoted from the act of 1892 was intended for the benefit of illegitimate children only, and that a person not of the blood of the testator, donor or grantor was not entitled to the exemption under that clause, however clear may have been the intention of the parties to assume the practical relation of parent and child, or however long such assumed relation may have continued. In this case the Appellate Division of the first department affirmed the order of the surrogate imposing the tax upon the authority of the case of *Hunt*, without an opinion. Upon the record it must be taken as established that the assumed relation of parent and child existed between the testator and Mrs. James for ten years prior to his death, and the question to be determined is whether a testator may, within the second section of the act of 1892, sustain to a person not of his blood, and in the absence of a legal adoption of such person as his child, the relation of parent so as to entitle such person, for whom provision is made in the will, to the benefit of the exemption. There is a serious conflict upon the subject in the decisions in the Supreme Court. In the case of *Nichols* (91 Hun, 140), decided by the General Term of the third department, and in the case of *Butler* (58 Hun, 400), decided by the General Term of the second department, the construction put upon the statute by the first

department in the case of *Hunt*, which limited the mutual acknowledgment clause to the case of illegitimate children, was not adopted, but the clause was held to cover the case of persons not of the blood of a testator, between whom the relation of parent and child had been mutually recognized for the period of ten years prior to the testator's death. We are required in the present case to determine this controverted question.

The material part of section 2 of the act of 1892 is as follows: "When the property or any beneficial interest therein passes by any such transfer to or for the use of any father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, or any child or children adopted as such in conformity with the laws of this state, of the decedent, grantor, donor or vendor, or to any person to whom any such decedent, grantor, donor or vendor for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent or to any lineal descendant of such decedent, grantor, donor or vendor born in lawful wedlock, such transfer of property shall not be taxable under this act, unless," etc. There are three classes of cases contemplated by this section, in which the parental relation is to be regarded as existing for the purposes of the section. The *first* is the actual legal relation of parent and child, between parents and their children born in lawful wedlock. This relation is defined by the designation " child " in the enumeration in the first clause of the section, since the word child or children used in statutes or wills, unless the meaning is extended by the context, is, in general, deemed to intend legitimate children only. (4 Kent, 414, 417, notes, and cases cited.) The *second* class are persons adopted as children in conformity with the laws of the state. The formalities required for the legal adoption of children and the legal rights resulting therefrom are prescribed and defined by chapter 830 of the Laws of 1873, and the amendatory act, chapter 703 of the Laws of 1887. Under these acts minors alone are the subjects of adoption. But it is not required that an adopted child shall be of the blood

of the person adopting him, or otherwise related to him. The *third* class is the one under consideration in the present case. This class embraces " any person " to whom the decedent, etc., " for not less than ten years prior to such transfer, stood in the mutually acknowledged relation of a parent." Was it the intention of the legislature by this clause to provide for the case of illegitimate children only ? The language imports no such limitation. The words " any person " seem inconsistent with so narrow a construction. There can be no doubt that illegitimate children may come within the description, but the question is are all other persons excluded ? It is to be observed that if this clause was intended to apply to illegitimate children only, there was no. difficulty in making the intention plain. The court, in construing the words " any person," is asked to interject the word " illegitimate," which the legislature omitted. Moreover, the section, taken together, gives no color to the suggestion that the legislature intended to favor illegitimates as such. They were excluded, as we have seen, in the designation of persons contained in the first clause of the section. They might be adopted and so entitled to the exemption under the second alternative clause. But they would become so entitled by reason of their adoption, and not of their relationship to the parent prior to their adoption. In the third alternative clause relationship by blood is not by any words used made a condition to the creation of the relationship of parent and child, and to confine the meaning of the words " any person " to natural children is not justified by the ordinary rules of interpretation. As in cases of adoption, natural children may come within the description and be entitled to the exemption. But, as we construe the statute, the fact that they were natural children would be an immaterial circumstance. The question in such case would be, was the relation of parent and child mutually acknowledged between the testator and the claimant for at least ten years prior to the testator's death ? If it had been the intention of the legislature to benefit the innocent child of meretricious commerce, there would seem to be no reason why any period

of time should be interposed, during which the relation should be acknowledged, as a condition of the child's enjoying the benefit conferred. The death of the parent before the child reached the age of ten years, or an acknowledgment of the relation, deferred to a period within ten years of the death of the parent, would deprive the child of the benefit of the exemption, a result which would seem to be most unjust if the legislature enacted the statute in the interest of illegitimates. The legislature, at the time of the enactment in question, had in mind the question of legitimacy, for it excluded illegitimate descendants of a decedent from the benefit of the exemption by the words " or to any lineal descendant of such decedent, etc., born in lawful wedlock." In other words, illegitimate descendants are not entitled as such to the exemption in any case, or under any circumstances. They only became so entitled under the alternative clause when the conditions of the statute are met, and then not because they are illegitimate, but because they are embraced within the words " any person," etc. The use of the words " mutually acknowledged" has been regarded as giving force to the view that illegitimate children were alone in the contemplation of the legislature. It is said that a fact may be acknowledged, and that the words " mutually acknowledged" do not properly express a relation not existing in fact. We think they were used as equivalent to the words " mutually recognized." The illegitimate child could not know the fact of its parentage, and it is difficult to suppose that, by the use of the words " mutually acknowledged relation," the legislature intended to denote the actual relation between a parent and his illegitimate offspring, and an open acknowledgment of that relation between themselves and the public for the period mentioned. The clause, we think, was intended to have a broader scope; to include, among others, those cases, not infrequent, where a person without offspring, needing the care and affection of some one willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person *in loco parentis*, or as a parent, and receives in return

filial attention and service. The fixing of a period of ten years, during which the relation must continue in order to entitle such person to the benefit of the exemption, is a safeguard against imposition, and when for that period this relation has been mutually acknowledged, the case is fairly brought within the policy upon which children are exempted from the imposition of a tax upon property derived under the will of their parents.

The fact that the claimant was at the inception of the relationship between herself and Mr. Beach, an adult, does not, we think, take the case out of the statute. The words " any person " include both minors and adults, and we are not at liberty to make an exception not contained in the statute. The fact that the person claiming to stand in *loco filiæ* was an adult when the alleged relationship had its inception, may well be regarded in considering the degree and sufficiency of the evidence, but if the relationship is established by competent and satisfactory proof, it is not a bar to relief that at its origin both parties were adults. It is not suggested that the evidence can be changed on a rehearing, and our conclusion is that the order of the Appellate Division and of the surrogate should be reversed, and that an order be entered declaring the property given to Mrs. James by the will of the testator exempt from taxation under the act of 1892.

All concur.

Order reversed.