In the Matter of the Appraisal of the Property of the Estate of JOHN M. DEUTSCH, Deceased, under the Act in Relation to Taxable Transfers of Property.

THE COMPTROLLER OF THE STATE OF NEW YORK, Appellant; JOHN F. RICHARDSON and GEORGE CONDERMAN, as Executors, etc., of JOHN M. DEUTSCH, Deceased, and Others, Respondents.

*Transfer tax — exemption therefrom — what evidence does not establish that an uncle of two nieces " stood in the mutually acknowledged relation of a parent" to them.*

A testator by his will bequeathed legacies to two of his nieces. The mother of the nieces in question died when they were respectively three and seven years of age, and upon her death they came from their father's home to that of the testator, who lived in a different portion of the State and who had no children of his own. The said nieces lived with the decedent and his wife for more than ten years and up to the time of their respective marriages. The marriages took place from the testator's house, after his consent thereto had been first requested and obtained. During the period that the nieces resided with the testator he provided for their support and education and it did not appear that their father, who is still living, ever contributed anything towards that purpose. The nieces invariably referred to the testator and his wife as "uncle" and "auntie," and the latter referred to the former as "nieces." The will of the testator described the legatees as "nieces." The parties never used the terms "father" and "mother" upon the one side or "daughter" upon the other.

*Held*, that the legatees in question did not come within section 221 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 458), which grants exemption from the transfer tax, "when the property or any beneficial interest therein passes by any such transfer to * * * any child, to whom any such decedent * * * for not less than ten years prior to such transfer

stood in the mutually acknowledged relation of a parent, provided, however, such relationship began at or before the child's fifteenth birthday and was continuous for said ten years thereafter."

McLENNAN, P. J., and WILLIAMS, J., dissented.

APPEAL by the Comptroller of the State of New York from an order of the Surrogate's Court of the county of Steuben, entered in said Surrogate's Court on the 4th day of February, 1904, modifying an order entered in said Surrogate's Court on the 21st day of July, 1903, fixing the transfer tax upon the property of the estate of John M. Deutsch, deceased, by striking from said order the tax levied upon legacies bequeathed by the said decedent to Mildred Conderman and Frances Richardson.

The first order imposed a tax upon said legacies and the latter order by its modification relieved the same from taxation, upon the ground that they came within the exemption of section 221 of the Tax Law (Laws of 1896, chap. 908, as amd. by Laws of 1901, chap. 458), which grants such exemption " when the property or any beneficial interest therein passes by any such transfer to * * * any child, to whom any such decedent * * * for not less than ten years prior to such transfer stood in the mutually acknowledged relation of a parent, provided, however, such relationship began at or before the child's fifteenth birthday and was continuous for said ten years thereafter," unless the property be personal property of the value of $10,000 or more, in which case it is to be taxable at the rate of one per centum upon the clear market value of such property.

*Newton B. Gorham*, for the appellant.

*Milo M. Acker*, for the respondents.

HISCOCK, J.:

The only question presented upon this appeal is whether the beneficiaries above named come within the exemptions of the statutory provision above quoted, and upon this question the majority of this court are of the opinion, opposed to that held by the learned surrogate, that they do not.

The evidence, briefly summarized established, that the legatees were the nieces of the decedent; that their mother died when they

were young and their father is still living; that at an early age and within that fixed by the statute they came from their father's home in one part of the State to the home of the decedent in another part, where they continued to live with him and his wife for a longer period than that required by the statute; that they were both married from his house upon his consent which was asked to said marriages; that during the period of their residence with him and before their marriage he provided for their support and education. It is assumed, though there is no competent evidence to that effect, that the father did not contribute anything towards such support. The uncle and aunt upon the one side and the nieces upon the other entertained affectionate and considerate relations towards each other and the latter contributed to the aid and happiness of the former.

But, upon the other hand, the relationship existing between the parties was never characterized or acknowledged by any of them as that of parent and children. The children invariably referred to the older people as "uncle" and "auntie," and the latter referred to the former as nieces. Never upon any occasion were the terms "father" and "mother" upon the one side or "daughter" upon the other, used. While some of the witnesses indulged in conclusions and inferences about what was supposed to be the relationship between the parties, it was perfectly understood by all of those who spoke directly upon the point that the beneficiaries were nieces, and that there was no actual or created relationship of children.

The will itself by which the bequests are made which are here involved expressly defines the beneficiaries as "nieces" and nowhere otherwise.

We think that this evidence fails to establish such a relationship as comes within the exemption of the statute. It is firmly settled that no person or property is impliedly exempt from taxation, and that where exemption is claimed the statute is to be strictly construed against the claimant. (*People ex rel. Newburgh Savings Bank* v. *Peck*, 157 N. Y. 51; *Matter of Moore*, 90 Hun, 162.)

In *Yazoo & Mississippi V. Ry. Co.* v. *Adams* (180 U. S. 1) it is said: "Exemptions from taxation are not favored by law, and will not be sustained unless such clearly appears to have been the intent of the Legislature. Public policy in all the States has almost neces-

sarily exempted from the scope of the taxing power large amounts of property used for religious, educational and municipal purposes; but this list ought not to be extended except for very substantial reasons; and while, as we have held in many cases, Legislatures may, in the interest of the public, contract for the exemption of other property, such contract should receive a strict interpretation and every reasonable doubt be resolved in favor of the taxing power. Indeed, it is not too much to say that courts are astute to seize upon evidence tending to show either that such exemptions were not originally intended, or that they have become inoperative by changes in the original constitution of the companies."

The fact that decedent and his wife invited or brought the beneficiaries to their home and provided for their support and education, and that upon one side there was authority and advice and upon the other side obedience and helpfulness, does not necessarily establish the relationship of parent and children contemplated by the statute as the basis for the exemption claimed here. It was perfectly proper for the older people, if they saw fit, to bring these young people to their home and establish this statutory relationship of parent and children. But, upon the other hand, it was equally proper and natural, if they desired, for them to do these things towards the children as their nieces, and without any thought whatever of ever changing the relationship of uncle and aunt and nieces to anything else. We do not think that we should hold that the mere fact that an uncle brings a nephew or niece to his house, and during infancy supports and advises and guides him or her, necessarily establishes the relationship of father and child under this statutory provision or for any other purpose. We may assume as a matter of ordinary experience that not infrequently an older person invites to his home and rears and cares for some younger person with no idea whatever of changing the actual relationship, if any, which exists between them or of establishing some new one of parent and child. Such indeterminate and uncertain acts are to be subjected to the further test of the statute which requires that before the relationship of parent and child can be regarded as having existed, it must have been mutually acknowledged by the parties. This was not done in this case. For some reason the parties, while enjoying and sustaining some of the relations which

FOURTH DEPARTMENT, JULY, 1905.          [Vol. 107.

would be incidental to the condition of parent and child, did not choose to assume or acknowledge that that relationship had been created or existed. There was no reason why all of the actual benefits to be received by one side from the other might not just as well be enjoyed under the actual relationship of uncle and niece as under a newly created and statutory one of father and child. Hence, all during the decedent's life, instead of mutually acknowledging that he was the father and the beneficiaries the daughters, the parties continuously adhered to the view that the original relationship of uncle and nieces still existed and was continued. And the language of the will seems to us to be especially significant. The testator must be assumed to have known what was the law upon this subject, and yet knowing it, in so solemn an instrument as his last will, he preferred to designate and treat the beneficiaries distinctly and unequivocally as his nieces.

We think that this case comes within the decision of this court in *Matter of Davis* (98 App. Div. 546). Practically all of the controlling facts were the same in that case as this. The benefactor furnished a home and advice and consent to marriage and in part support and maintenance. All of the substantial features incident to the relationship of father and child were as much present in that case as in this, save that here it is assumed without, as we feel, adequate proof that the uncle contributed the entire support and maintenance of his nieces, instead of in part as in the *Davis* case. But in the case cited, as in this one, the parties neglected or refused to comply with the requirements of the statute that there should be an open and mutually acknowledged relationship of father and child, and it was held that an exemption had not been established within the statute.

In the case of *Matter of Beach* (154 N. Y. 242), where an exemption was established, the court takes occasion to say : " The testator introduced the appellant as his daughter, and, in short, the evidence is, that from 1881 until the death of the testator in 1893, the assumed relation of parent and child continued between the testator and Mrs. James without interruption, and was publicly acknowledged."

It is said that it should not be urged against the respondents that they did not call the decedent "father" and he call them

"daughters," because that relationship did not actually exist and the parties should not be required to have falsified and misstated their relationship. This argument, however, does not seem to us to have force. Under the statute in question and for its purposes a person may create the relationship of father and child with one who in blood and reality bears no such relationship to him. If a person sees fit so to do he may build up, for the purposes of the statute, a relationship of parent and child which supersedes and takes the place of the natural one existing between the child and some other person. When he has done this, the statute not only permits but requires that this new relationship shall be mutually acknowledged and recognized, and we see no way in which this may be so aptly and properly done as by employing the terms which naturally and universally indicate the relationship of parent. Those terms of "father" and "child" are properly applicable to the new relationship which has been created, and we do not think it was any excuse for withholding the mutual acknowledgment required by the statute to say that the employment of these terms would be an indulgence in falsehood and misrepresentation.

The order appealed from should be reversed in so far as it modifies the order of July 21, 1903, by striking out the tax levied and assessed upon the legacies bequeathed by the decedent, John M. Deutsch, to Mildred Conderman and Frances Richardson, with costs to the appellant.

All concurred, except WILLIAMS, J., who dissented in an opinion, in which McLENNAN, P. J., concurred.

WILLIAMS, J. (dissenting):

The order modifying the original decree should be affirmed, with costs.

This appeal involves the question whether the respondents were, within the provision of the Tax Law (Laws of 1896, chap. 908, § 221, as amd. by Laws of 1901, chap. 458), children to whom the decedent, for not less than ten years prior to his death, *stood in the mutually acknowledged relation of a parent*, such relationship commencing at or before their fifteenth birthdays respectively and being continuous for the ten years thereafter. The respondents were nieces of the decedent. Their mother died when they were

three and seven years old respectively. The decedent and his wife were without children of their own, and after the death of their mother the respondents came to live with their uncle and aunt and remained with them until their respective marriages, more than ten years later. Whether they occupied the relationship referred to in the statute was a question of fact to be determined from the evidence given on the hearing. The surrogate by the order appealed from and the decree as modified determined this question in favor of the respondents. The evidence seems to establish this relationship quite satisfactorily and conclusively. If the relationship did not exist as to the respondents it would be difficult to conceive of a condition of things that would establish it. It is said the neighbors knew they were nieces of the decedent, that he said they were his nieces and that the respondents called him and his wife uncle and auntie. Well, those things were *true*, and if they had called each other father, mother and daughters they would continually have been saying what was *untrue*. They treated each other in every conceivable way as parents and children. During all the years they lived with decedent he and his wife cared for them as they would for their own children, providing at their own expense for their every want and comfort, furnishing them clothes and spending money and sending them to school. They were obedient to decedent and his wife, made them their advisers and confidants in childhood and young womanhood, asked their consent to their engagements and marriages and were married from decedent's home. They were treated by and treated decedent and his wife in every respect as if actually parents and children, the only difference apparently being that they recognized their *real* relationship instead of forgetting it or misrepresenting it. What more could they do to establish the relationship referred to in the statute? This case is distinguishable from *Matter of Davis* (98 App. Div. 546) in that the decedent there by the use he made of the infant's property clearly refused to acknowledge the relationship of parent. He used her own money for her support, maintenance and education, as he could not have done if the relationship of parent and child had existed. That case was decided by a closely divided court, and the presence of that fact in the case may well have influenced the majority in arriving at the conclusion they did. If the treatment of each other

was such as would be found between parent and child it could hardly be said that the statute was not complied with *merely* because they told the truth instead of a lie when they called each other uncle and nieces instead of father and daughters.

Chief Judge ANDREWS said, in *Matter of Beach* (154 N. Y. 242, 248), with reference to section 2 of the Transfer Tax Act (Laws of 1892, chap. 399), which contained substantially the same provision as is found in this statute: "The clause, we think, was intended to have a broader scope; to include, among others, those cases, not infrequent, where a person, without offspring, needing the care and affection of someone willing to assume the position of a child, takes, without formal adoption, a friend or relative into his household, standing to such person, *in loco parentis*, or as a parent, and receives in return filial attention and service."

The evidence here discloses treatment of each other by decedent and his wife and the respondents and their daily lives in their home which speak plainer than mere words can of the relationship mutually acknowledged between them. Decedent spoke of them as his girls, and he treated them as such. He did not *say* they were his daughters when they were not. They treated him and his wife as they would have done a father and mother. They used the designation of uncle and auntie truthfully instead of saying they were father and mother when they were not. We think this a proper case to apply the provision of the statute in question. There is no great public purpose to be served by giving the statute such a restricted construction as to defeat the real intention of the Legislature.

The surrogate was right in the final decision made by him, and the order appealed from should be affirmed.

McLENNAN, P. J., concurred.

Order appealed from reversed, in so far as it modifies the order of July 21, 1903, by striking out the tax levied and assessed upon the legacies bequeathed by the decedent, John M. Deutsch, to Mildred Conderman and Frances Richardson, with costs to the appellant.