SWING, Trustee, etc., Appellant, v. THE KARGES FURNITURE COMPANY, Respondent.

**St. Louis Court of Appeals, February 19, 1907.**

1. **INSURANCE: Mutual Companies: Contingent Liability.** In an action by the trustee of an insolvent mutual insurance company to recover assessments against a policy holder, where the statute under which the company was organized and operated provided that the company should fix a uniform rule of contingent liability on the part of the policy holder, and the performance of such statutory duty is essential to render the policy holder liable for assessments, the petition must aver performance of such duty in fixing the contingent liability in order to state a cause of action.

2. ———: ———: ———: **Statutory Requirements.** Whether the failure to comply with statutory requirements regarding the fixing of contingent liability on the part of subscribers to a mutual insurance company avoids contracts of insurance made by such company depends on whether the statute is intended to prescribe mere formalities for the purpose of making such contracts definite and certain or to affix conditions upon which their validity depends; such enactments do not avoid contracts made without compliance with the prescribed forms, unless they declare they shall be invalid for that reason or use words which clearly import they shall be invalid.

3. ———: ———: ———: **Estoppel.** Section 3634 of the Statutes of Ohio provides that "any mutual fire insurance company must in its by-laws and in its policy fix by uniform rule the contingent liability of its members and the payment of losses and expenses, and such liability shall not be less than three or more than five annual cash premiums," while section 3650 of the same statutes provides that every person effecting insurance in a mutual company shall be bound to pay for losses and such necessary expenses as accrue in and to the company, etc. A policy holder in a mutual company organized under such statutes, by accepting and retaining a policy of insurance, became subject to a contingent liability and assessment thereon, although the company failed to fix a uniform rule for contingent liability, and the policy holder was subject to the maximum assessment provided in the statute, that is, five times the annual premium, when necessary to meet the liabilities of the company, and the liability could be enforced by the decretal order of the court of equity of the State of Ohio. By the acceptance and retention of a policy, a member became subject to the contingent liability, although the statute provided that it should not become liable for contingent losses unless he assumed such liability in writing.

4. ———: ———: ———: **Pleading.** A petition in an action brought in this State by the trustee of an insolvent mutual insurance company organized under the statutes of Ohio, seeking to recover against a member the contingent liability which was determined by the Supreme Court of Ohio, setting out the sections 3634 and 3650 of the Ohio Statutes was not demurrable for failing to state the defendant was a party to the proceeding in the Ohio Court; the defendant by his privity with the company of which he was a member is *prima facie* bound by the decree.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED (*with directions*)'.

*Henry W. Allen* and *Patterson A. Reece* for appellant.

(1) In an action brought by a trustee for creditors of an insolvent mutual insurance company, against its policy holders, for an assessment, the foundation of the action is the statutory obligation resting on each policy holder to pay his just per cent of its debts incurred while he was insured in it, as defined by the assessment decree. This statutory obligation is independent of any expressed promise, made in writing or otherwise; consequently, plaintiff in such action does not have to allege affirmatively any agreement, written or otherwise, of such defendant policy holder. Nichols v. Stevens, 123 Mo. 97; State v. Fire Ins. Co., 42 O. S. 564; Upton v. Tribilcock, 91 U. S. 56; Sanger v. Upton, 91 U. S. 64; Hawley v. Upton, 102 U. S. 314; Potts v. Wallace, 146 U. S. 705. (2) Where an incorporation is directed to do something under the law, the legal presumption is that the law has been obeyed, and not that the company has violated the law. Life Ins. Co. v. Stone, 42 Mo. App. 387; Fire Ins. Co. v. Horner, 17 O. 409; Lawson on Presumptive Evidence, Rule XVI, and subrules thereto. Consequently, such non-compliance with the statute is an affirmative defense, which does not arise on demurrer, but must be pleaded, if at all, in defendant's answer. (3) Facts which are consistent with the truth of plaintiff's pleadings, but which go to show notwithstanding that he has no cause of action, or which avoid their force or effect, are new matter, which must arise, if at all, in defendant's answer. Lanitz v. King, 93 Mo. 513; Bank v. Loyds, 18 O. S. 353; Witte v. Lockwood, 39 O. S. 141.

*Stewart, Eliot & Williams* for respondent.

'(1)    The petition does not show any relation between the defendant and the Union Mutual Fire Insurance Company, subjecting the defendant to any liability based upon a contingent mutual liability. It is evident that the very foundation of the contract between the subscriber and the company rests upon the "original amount of contingent liability" which the company "must in its by-laws, and must in its policies, fix." Section 3651 of the Ohio Statutes, set out in the petition, provides: "but no member shall ever be required to pay for any loss occasioned by fire, or inland navigation, more than the whole amount of such liability." (2)   Not only does the petition disclose that the company failed to "fix" any definite amount of contingent liability, but the petition fails to show that this defendant ever agreed to assume any contingent liability at all. The appellant contends that the mere fact of insuring in this company made the defendant liable to assessment. This is negatived by the express words of the Ohio Statutes. One who insures, by section 3650, is bound to pay for losses and expenses only "in proportion to the original amount of his contingent liability."

STATEMENT.—Plaintiff's case went off, in the court below, on a demurrer to the petition; therefore it is necessary to state the substance of that pleading and this will be done by a recital of the material facts alleged. Plaintiff is a trustee of the Union Mutual Fire Insurance Company, a foreign corporation organized under the laws of the State of Ohio, on May 28, 1887. Said company continued to do insurance business during the years 1888 and 1890, inclusive. On December 18th, of the latter year, it was dissolved by a decree or judgment of the Supreme Court of Ohio in a winding-up proceeding wherein the State of Ohio, at the relation of the attorney-general of the State, was plaintiff and the

insurance company defendant. In the decree plaintiff Swing was appointed trustee for the creditors and policy holders of the company and he accepted the trust. Further proceedings occurred in said case in the Supreme Court of Ohio, the result of which was that on June 11, 1901, an order or decree was made, on motion of plaintiff as trustee, to confirm the report theretofore rendered by Malcolm G. Davis, referee, who had been previously appointed to take evidence and report to the court in regard to certain matters. On consideration of the evidence and the representations set forth in the report, and after hearing arguments and being fully advised in the premises, the Supreme Court of Ohio found said Insurance Company, at the time it ceased to do business, December 18, 1890, was insolvent and unable to pay its debts and that it was necessary to make an assessment on all persons liable to pay fire losses and other obligations of the company, together with interest thereon and the reasonable expense of winding up the company's affairs. Among other things the court expressly found and held that the unpaid liabilities of the company were incurred on and between April 25, 1889, and December 18, 1890, and, to quote the language of the decree as recited in the petition in the present cause, "that all persons who held policies of insurance in said company on their property, during the time the liabilities of said company were incurred, are liable for their just proportion of said liabilities, with interest thereon, together with the expense of winding up the affairs of said company, including the expense of litigation with such of them as do not pay this assessment (viz., the one ordered by the court) without suit." The court further found the expense of the litigation would be one-third the amount of the contested assessments, and therefore ordered that all persons who paid their respective assessments as levied by the decree, without being sued, should be allowed an abatement of one-third. The trustee was

ordered to sue for and collect all assessments in accordance with the decree, without rebate, and after legal notice to the respective policy holders, and to adjust and settle all demands and do all things necessary in the winding up of the company in accordance with law. The court further ordered and decreed as follows:

"In all cases where persons were policy holders of said company and where no note was given, such persons shall be liable to assessment on a basis of five times their annual premium, just as if they had given notes, and in all cases where the premium notes had been returned to the makers thereof without payment of the losses and expenses chargeable thereto in accordance with the assessments herein determined, such persons shall be liable to this assessment just as if such notes had not been returned."

Assessments against policy holders of the company were made for seven quarterly periods. For the first quarter; to-wit, from April 25, 1889 to June 30, 1889, inclusive, the amount of liability of the company, including interest and expense of collection, was found to be $8,916.67, and the total amount remaining unpaid of premium notes and contingent liabilities of persons then holding policies and still solvent, to be $170,648.13; hence the assessment on said persons for said period was ordered to be 7.0701 per cent. Similar computations were made and assessments decreed and ordered for the quarter between June 1, 1889 and September 30, 1889, inclusive; between October 1, 1889 and December 31, 1889, inclusive; between January 1, 1890 and June 30, 1890, inclusive; between July 1, 1890 and September 30, 1890, inclusive, and between October 1, 1890 and December 18, 1890, inclusive. The assessment on the premium notes or other contingent liability of policy holders for the second quarter was 3.5823 per cent; for the third quarter 4.8248 per cent; for the fourth quarter 7.0194 per cent; for the fifth quarter 1.8258 per cent;

for the sixth quarter 28.0095 per cent; for the seventh quarter 40.7289 per cent. Plaintiff's petition in the present case alleges that said decree of the Supreme Court of the State of Ohio, ordering the assessments aforesaid, is still in force and effect; that defendant's proper assessments under the decree, in order to pay the indebtedness of the company incurred while defendant's property was insured, are certain specified sums for the seven quarterly periods aforesaid. These sums are given in the petition, but need not be stated. The total aggregate of assessments alleged to be due from defendant under the decree, is $212.53; for which judgment is asked. The petition alleges that thirty days' written notice was given defendant of its assessment and payment demanded, and refused. In addition to the foregoing facts, the petition quotes some sections from the laws of Ohio in force during the years 1888 to 1890, inclusive, and pertaining to mutual insurance companies. After quoting those statutes, the petition alleges that defendant, the Karges Furniture Company, was in said years a corporation organized under the laws of Indiana, and is a merchant and manufacturer; that as such it accepted from said insurance company outside the State of Missouri, three policies of insurance, insuring its property, which is situate in the State of Indiana, against loss by fire and lightning. The petition then proceeds to state the numbers and amounts of the policies, and the premium notes given for them, but instead of reciting three policies, recites two, as follows:

"No. 2505, for $1,075, from April 1, 1889 to April 1, 1890, premium $45.68.

"No. 4250, for $1,075, from April 1, 1890, to December 19, 1890, premium $45.68."

It is next alleged that defendant's contingent liability to assessment as a policy holder, provided for in the quoted statutes of the State of Ohio, is not less than three or more than five annual cash premiums, as written

in the policy, and that by the aforesaid decree of the State of Ohio, defendant's liability under the assessment was fixed as follows: "and that defendant's liability on its said policy was and is five times the amount of the respective annual premiums as hereinabove and herein-before set out." The petition then charges "that by accepting and holding said policies so issued, defendant effected insurance in said insurance company during the time and in the amounts aforesaid, *and by reason thereof, said defendant became legally and equitably liable for its just proportion of all losses and expenses incurred by said insurance company during the time said defendant held said policies, and to pay such assessments on the amount of the said contingent liability to assessment of said defendant's said policies of insurance, as should be required by law."* (Italics ours.) The statutes of Ohio as pleaded in the opinion are essential to a decision of the question before us and will be copied.

"Sec. 3634. No joint-stock fire insurance company and no joint-stock live stock insurance company shall be incorporated under this chapter with a smaller capital than one hundred thousand dollars, which shall be divided into shares of one hundred dollars each; nor shall any company on the plan of mutual fire insurance be incorporated until not less than five hundred thousand dollars of insurance, in not less than two hundred separate risks, no one of which shall exceed $5,000, have been subscribed and the premium thereon for one year, paid in cash, aggregating not less than $10,000 in cash, each subscriber agreeing, in writing, to assume a liability to be named in the policy, subject to call by the board of directors, in a sum not less than three or more than five annual premiums. And the same liability shall also be agreed to in writing by each subsequent subscriber or applicant for insurance, who is not a merchant or manufacturer. And each subscription, before incorporation, shall be accompanied by a certificate of a justice of the

peace of the township or city where such subscriber resides, that the subscriber is, in his opinion, pecuniarily good and responsible to the extent of the contingent liability agreed to be assumed. Mutual fire insurance companies organized under this act may thereafter charge and collect in advance upon their policies a full annual premium in cash, but such policies shall not compel subscribers, insured or assured, to renew any policy nor pay a second or further annual or term premium. Any such company must in its by-laws, and must in its policies, fix by a uniform rule the contingent mutual liability of its members for the payment of losses and expenses; and such contingent liabilities shall not be less than three nor more than five annual cash premiums as written in the policy; but such liability shall cease with the expiration of the time for which a cash premium has been paid in advance, except for liability incurred during said time; but nothing in this section shall apply to associations for the mutual protection of their members against loss by fire heretofore or hereafter organized as provided in section 3686 of the Revised Statutes.

"Sec. 3650. Every person who effects insurance in a mutual company, and continues to be insured, and his heirs, executors, administrators, and assigns, shall thereby become members of the company during the period of insurance, shall be bound to pay for losses and such necessary expenses as accrue in and to the company in proportion to the original amount of his deposit note or contingent liability; and the directors shall, as often as they deem necessary, settle and determine the sum to be paid by the several members thereof, and publish the same in such manner as they may choose, or as the by-laws prescribe, and the sum to be paid by each member shall always be in proportion to the original amount of such liability, and shall be paid to the officers of the company within thirty days next after the publication of such notice; provided, that whenever such company is not

possessed of cash funds above its reinsurance reserve sufficient for the payment of incurred losses and expenses, it shall be deemed to have impaired its capital, and when such impairment shall exceed twenty-five per cent of the re-insurance reserve required to be maintained, it shall make an assessment for the amount needed to pay such losses and expenses upon its members liable to assessment therefor in proportion to their several liabilities, and to make good the re-insurance reserve; and no such company shall borrow money or create a debt unless for the purpose of necessary office buildings, to continue beyond the period when such assessment may be collected and applied to the payment thereof, and no member shall be assessed for liabilities incurred prior to his membership.

"Sec. 3651. If a member neglect or refuse, for the space of thirty days after the publication of such notice and after demand for payment, to pay the sum assessed upon him in (as his) proportion of any loss as aforesaid, the directors may sue for and recover the whole amount of contingent liability, with cost of suit; but execution shall only issue for assessments and costs as they accrue, and every such execution shall be accompanied by a list of losses for which the assessment is made; and if the whole amount of such liability be insufficient to pay the loss occasioned by any fire or fires, the sufferers insured by the company shall receive, toward making good their respective losses, a proportional share of the whole amount of such liability, according to the sums of them respectively insured; but no member shall ever be required to pay for any loss occasioned by fire, or inland navigation, more than the whole amount of such liability."

The ground of defendant's demurrer is that the petition states no facts to constitute a cause of action. As plaintiff refused to plead further after the court had

sustained the demurrer, final judgment was entered for defendant and plaintiff appealed.

GOODE, J. (after stating the facts).—Counsel for defendant insist that the lower court's ruling on the demurrer was right for two reasons: first, the petition contains no allegation to show the insurance company had, either in its by-laws or in the policies issued to defendant, fixed a uniform rule to control the liability of members holding policies to contribute to the payment of losses and expenses, as required by sections 3634 and 3650 of the statutes of Ohio; second, the petition does not show defendant assumed in writing, any contingent liability for the losses of the company as provided by section 3634 of said statutes. To the first of those propositions plaintiff's counsel answer, firstly, that unless there is an affirmative showing to the contrary, the law will presume the company had fixed by by-law, or in some proper mode, the liability of members, because that duty was imposed on it by statute. In other words, that nonperformance of this statutory duty is an affirmative defense to be interposed by the defendant, instead of performance being a condition precedent to recovery, which plaintiff must allege. In reply to this proposition defendant's counsel say that though it is sound generally speaking, the presumption ought not to be indulged in aid of the present petition, because all the allegations in it are inconsistent with the theory that any rate of contingent liability was fixed by the by-laws. Secondly, counsel for plaintiff say there is a statutory obligation on defendant as a policy holder to respond to meet the losses of the company to any amount not less than three or more than five annual premiums on its policies, which statutory obligation is independent of any express promise given by defendant and binds it regardless of whether it gave such a promise or not. As to defendant's contention that the petition fails to show a cause

of action because it does not state that defendant ever agreed in writing to assume a contingent liability, plaintiff's counsel invoke the foregoing proposition that defendant was bound by the statutes to contribute to losses, regardless of whether it agreed in writing or otherwise to do so, and answer further that the statutes of Ohio provide for taking an agreement in writing only from original subscribers to the company (i e., incorporating members) or subsequent members who are neither merchants nor manufacturers, and as the petition says defendant is both a merchant and a manufacturer, the clause regarding an agreement in writing to assume a contingent liability is inapplicable to it. Defendant's counsel respond that the statutory words: "And the same liability (viz. the contingent liability assumed by original members) shall also be agreed to in writing by each subsequent subscriber or applicant for insurance who is not a merchant or manufacturer," do not mean a merchant or manufacturer who takes insurance need not agree in writing in order to be bound for assessments; that the proviso for a written obligation is as essential in his case as in that of any other applicant for insurance. Defendant's counsel say the true meaning of this clause is, that the company may fix the liability of a merchant or manufacturer at less than three annual premiums, which cannot be done in the case of other applicants, but that when fixed it must be assented to in writing by the subscriber. We have presented, in the foregoing statement, the different contentions of the parties.

The suit in the Supreme Court of Ohio strikes us as one which was not according to the common law, but of an extraordinary nature, and entertained pursuant to some statutory grant of power to the court. If this was true, it is questionable if said court can be presumed, in this proceeding in another State, to have had jurisdiction of the subject-matter of the suit. [Kelley v. Kelley,

161 Mass. 111; 25 L. R. A. 806, 807 and cases cited; Wilhelm v. Parker, 17 Ohio Ct. Rep. 234.] Plaintiff's petition contains no statement regarding the jurisdiction of the Ohio Supreme Court over the subject-matter; and if it is essential to establish its jurisdiction; the petition will not suffice to let in evidence of the facts. The demurrer is broad enough to reach a failure to show jurisdiction; but as no point has been made here, or in the court below, against the petition on this score; and as it may be hereafter amended, if necessary, we will say no more on the subject.

Ought the petition to be aided by presuming that, because the insurance company, or its governing body, was charged by statute with the duty of fixing a uniform rule of contingent liability, it did so? This question has reference to the omission of an allegation that the company had fixed the contingent liability of members for the payment of losses and expenses, either in its by-laws or policies. Defendant's counsel concede the presumption would have to be indulged, if the averments of the petition were not inconsistent with the supposition that the company had adopted such a by-law. We do not commit ourselves to this view; and, without passing on the point, will say our present opinion is that if performance of the statutory duty was essential to render the defendant liable for assessments, it would be necessary, in order to state a case, to aver performance. A party suing for a liability must state the facts on which it depends, and we call to mind no rule regarding presumptions of right conduct, which goes to the length contended. But it is apparent that in omitting to aver in the petition the adoption of a by-law fixing a scale of contingent liability, the pleader did not rely on a presumption that one had been adopted, because the law required it to be, and therefore, the averment of its adoption would be superfluous. All the alleged facts which touch the question, point to the conclusion that no aver-

ment of the kind was inserted because any by-law the company may have enacted was not counted on as the ground of recovery.   On the contrary the gravamen of the case stated is that defendant, by accepting and retaining policies of insurance, became subject to a contingent liability and an assessment thereon and that this liability was imposed by the statutes.   The steps taken by the Supreme Court of Ohio toward enforcing it by a decree which ascertained the amount of the company's indebtedness, and to what limit policy holders ought to be assessed, and levying the assessments, are also alleged.   We understand the purpose of pleading the decree is to show that after the company became insolvent, a court of the company's home State made the assessment necessary to meet the company's debts, in a winding-up proceeding in chancery, thereby laying a basis for the present action.   [Howorth v. Angle, 162 N. Y. 190; Howorth v. Lombard, 175 Mass. 570; Hale v. Hardon, 95 Fed. 747; Kirtley v. Holmes, 107, Fed. 1; Pfaff v. Gruen, 92 Mo. App. 561.]   To presume the company fixed the liability of members and uphold plaintiff's petition on that account, would be equivalent to allowing him to proceed with his evidence and possibly to judgment, in a case not stated or intended to be.

In view of our conclusion in regard to helping the petition by presuming the company had fixed the contingent liability of the policy holders, we have to determine whether or not such action was a prerequisite to assessing them to meet losses, or whether they became subject to assessment by accepting and retaining their policies. If it was a prerequisite the petition is bad.   The statutory provisions regarding what the company should do, says; among other things: "Any such company (a mutual fire insurance company) must, in its by-laws, and must in its policies, fix by a uniform rule the contingent liability of its members for the payment of losses and expenses, and such liability shall not be less than three

or more than five annual cash premiums as written in the policy." Construing that clause literally there would be no contingent liability unless the amount of it was fixed both in the by-laws and in the members' policies. But instead of receiving a literal interpretation, the clause should be construed with reference to other statutory provisions *in pari materia*, and particularly the first paragraph of section 3650, which imposes a liability on all persons taking insurance, and also with reference to the purpose of requiring a contingent liability on the part of members. And first we ask, what was this purpose? Mutual fire insurance companies have no paid up capital, constituting a fund to meet losses, and hence a fund must be accumulated from other sources. The Ohio mode of accumulating it was to provide that no company should be incorporated until $500,000 insurance, in not less than two hundred separate risks were subscribed and one year's premiums thereon paid, aggregating not less than $10,000. This fund was deemed insufficient to insure the payment of losses and, therefore, a contingent liability was imposed on each subscriber, original and subsequent; unless subsequent subscibers who were merchants or manufacturers were excepted. This liability, the statute said should not be less than three or more than five annual premiums. The first legislation on the subject required the subscriber to execute deposit notes subject to assessment; but this was changed by a later enactment so that he might agree in writing to be bound contingently. (See Richards v. Swain & McCormick, 7 Ohio N. P. Rep. 68, wherein the legislative history of mutual companies is traced.) Obviously the purpose in providing for an assessment of members was to enable the company to meet its losses when the cash premiums were inadequate. The premiums and contingent liability were a substitute for a paid up capital stock; and like the capital of ordinary corporations, constituted a fund to be held by the com-

pany or its officers, in trust for the payment of losses and expenses. The policy holders were stockholders *sub modo.* [2 May, Insurance (4 Ed.), sec. 549.] Every person who took insurance in the company was not only subject to this contingent liability, but had the right to look to it as a source of indemnity if he suffered a loss. "He became at once insurer and insured." [2 May, Insurance, sec. 548.] Defendant's liability may depend on two contingencies; that he was in fact a member and policy holder in the defunct corporation, or was estopped to deny membership. The first contingency turns on whether or not the statutory requirements regarding the fixing of contingent liability ought to be construed to make a contract of insurance void for non-observance. The statutes prescribed three things: that the liability be settled by a by-law; be mentioned in the policy of insurance, and agreed to in writing unless the subscriber for insurance was a merchant or manufacturer. Legislation regulating the form and execution of contracts is liberally construed so as to invalidate men's agreements as little as possible. [Endlich, Statutes, p. 432, sec. 438.] The question always is, in effect, whether the lawmakers intended to prescribe formalities for the purpose of making the particular class of contracts definite and certain or to affix conditions on which their validity should depend. If an agreeement not statutory in form, is presented, we have to ask, as a writer of high authority said: "Does the Act mean to forbid this agreement or not? [Walds-Pollock, Contracts (3 Ed.), p. 398.] The same author further says in this connection:

"When conditions are prescribed by statute for the conduct of any particular business or profession, and such conditions are not observed, agreements made in the course of such business or profession (e) are void if it appears by the context that the object of the Legislature in imposing the condition, was the maintenance of public order or safety or the protection of the persons

dealing with those on whom the condition is imposed: (f) are valid if no specific penalty is attached to the specific transaction, and if it appears that the condition was imposed for merely administrative purposes, e. g. the convenient collection of the revenue." [P. 401.]

The Ohio statutes contain no words invalidating contracts for insurance unless the several matters prescribed in relation to the contingent liability of members have been observed. Neither is there language which reasonably imports such a result; and we think that an informal contract so far executed that the party insured had paid his premium and accepted a policy, would bind the company to compensate him if a loss occured. Insurance policies have been held void on account of non-conformance to statutory formalities; but this was when the statute evidently intended that an attempt to contract without observing the statute, should be invalid. [Lynn v. Burgoyne, 13 B. Mon. (Ky.) 400; Buffum v. Ins. Co., 3 Allen (Mass.) 360.] In Henning v. Ins. Co., 47 Mo. 425, it was held that an oral contract of insurance was invalid because the charter of the company declared "all the conditions of the policies issued by said company shall be printed or written on the face thereof;" and one of the by-laws provided: "that the president shall sign all policies or other contracts by which the company is bound." It might well be held that the purpose of such legislation was to inhibit the making of policies except in the statutory manner. Nevertheless, the case was not followed and was commented on in terms of disapproval in Baile v. Ins. Co., 73 Mo. 371, wherein the same point arose for decision. The general doctrine is that such enactments do not avoid insurance contracts made in other than the prescribed mode, unless the statute declares they shall be invalid or uses words clearly importing they shall be. [Franklin Ins. Co. v. Colt, 87 U. S. —; Franklin Ins. Co. v. Taylor, 52 Miss. 441; Dayton Ins. Co. v. Kelley, 15

Am. Rep. 612; Trustees v. Ins. Co., 19 N. Y. 305; Sanborn v. Ins. Co., 16 Gray 448, 77 Am. Dec. 419; New Eng. Ins. Co. v. Schettler, 38 Ill. 166; Fireman's Ins. Co. v. Kuessner, 164 Ill. 275.] We incline to the opinion that the defendant was insured notwithstanding the failure to observe the requirements in regard to fixing the contingent liability, and that, no such liability having been fixed, the defendant was subject to the maximum assessment; that is, five times the annual premium. Of course the contract had to be reciprocal, and if the defendant had insurance, it was bound to meet the contingent liability; and, as it had accepted a policy without insisting on this liability being determined, it left the matter in the hands of the directors of the company within the statutory limits.

Courts occasionally put the liability of the insured, or the company, as the case may be, on the ground of estoppel. The reasons for doing this will appear from decisions from which we will quote, and we need not go into the matter.

There may be some difficulty in reconciling all the words of the statute with our construction, but on the whole, it looks reasonable and the only one which will realize the main purpose of the Legislature. In considering the charter of a mutual fire insurance company of earlier date, with reference to the point raised by a member in a suit for an assessment, that the declaration did not aver the company had complied with the law in a named particular, the Supreme Court of Ohio, in holding the subscriber estopped to raise the point, took note of the difficulty of construing the charter and said it was almost impossible to determine its meaning; but ruled that whatever the meaning, the member sued was as much to blame for non-compliance with it as any one else, and could not set up his own wrong as a defense. The conclusion we have reached from a study of the statutes is in accord with the Ohio courts. In Rich-

ards v. Swain and McCormick, supra, the action was by the receiver of a fire insurance association against policy holders for an assessment. The association had been dissolved by decree in chancery and the chancery court had ordered an assessment against all its members to discharge the indebtedness of the company. A general demurrer was interposed to the petition on the ground that it did not aver the defendants were members of the association. In reply to this point it was insisted by counsel for the receiver, that defendants became members by taking out insurance, and, also, as against the receiver who represented the creditors of the association, that defendants were estopped to deny their liability. The first point was based on section 3650 of the Revised Statutes of Ohio, which provides that every person effecting insurance in a mutual company shall become a member of the company during the life of the policy and be subject to contingent liability. This section has been quoted. The Ohio court distinguished between a mutual fire insurance company and a fire insurance association, holding that section 3650 only applied to companies and not to associations and that hence Swain and McCormick did not became members of the association, by virtue of that section, merely by taking a policy of insurance. The plain intimation of the opinion is that if their policies had been in a mutual company, as the present defendant's was, they would have been members. The opinion then points out that, to become a member of the association, it was requisite, under the statutes of Ohio, for the defendants to sign the constitution of the association. [R. S. Ohio, sec. 3690; State ex rel. v. Mut. Fire Assn., 50 Ohio St. 149.] Said statutes also prohibited such associations from issuing insurance contracts to any one but members. It was therefore ruled that as the petition did not aver that the two defendants had signed the constitution, nor generally, that

they had become members, it failed to show any right to collect assessments from them, unless it stated facts sufficient to estop them from denying their liability for assessments as against the receiver. On this point the court said:

"The petition avers that said defendants, under their firm name, held a policy in said association for $2,000, which policy was in force from July 23, 1894, to July 23, 1895. Section 3689, Revised Statutes, provides as before stated, that 'in no instance shall the power to insure against loss by fire or tornadoes be exercised to other than members of the association.' This provision was in force during the continuance of said policy. Defendants were bound to know that such was the law. While they did not take the step necessary to make the firm a legal member of the association, by accepting the policy they estopped themselves, in equity, from denying their liability to respond to assessments for the benefit of creditors of the association. The association had no legal right to insure this firm, until it signed the constitution. But it did issue the policy, it was accepted, the firm took the benefit of it, and with the benefit must go the burden of assuming in equity the liabilities of a member. While a legal membership was not effected, an equitable obligation was created toward other policy holders and creditors, and the petition states facts sufficient to show a liability on the part of the defendants to pay these assessments. [Trumbull v. Mut. Fire Ins. Co., 17 Ohio 407; Clark v. Thomas, 34 Ohio St. 46; Mansfield & Hahn, Trustees, v. Woods, Jinks & Co., 26 Bull. 111; Morawetz on Corp., sec. 296.]"

In Mansfield & Hahn, Trustees, v. Woods et al., 29 Week. Bull. 111, it appeared that the company was organized under the laws of Ohio and that afterwards it was ousted from the State by a decree of the Supreme Court; that it was insolvent and the plaintiffs had been appointed trustees by the Supreme Court to wind up its

affairs and collect assessments from the policy holders on their contingent liability. In defense of the action certain illegal conduct of the company was pleaded; among other things that it did not organize according to law to do business on the contingent liability plan, and that it carried on business both on the contingent liability and premium note plans, which was illegal. Other illegal acts were alleged in the answer. All the evidence to support these defenses was ruled out and the question for decision was whether the defenses pleaded would have been good if established. The court construed section 3650 and held that as soon as the defendant effected insurance and accepted a policy, it became a member of the corporation and a stockholder and liable in the same manner as the stockholders of other corporations. The court ruled further that a member of a corporation, when called on to pay his portion of the indebtedness, cannot set up that the company has not complied with the law, nor even plead, as against the receiver, that the subscription was induced by fraudulent representations.

In Rundle v. Kennan, 79 Wis. 492, 48 N. E. 516, a Wisconsin statute was construed which, like the Ohio statutes, provided that the members of mutual insurance companies should give a note or obligation binding them to answer to the company pro rata, according to the premiums on their policies, in order to meet the company's losses and expenses. [1 Wis. Stat. (San & B.) 1898, sec. 1941c.] Another section provided for an assessment by the officers of the company on all policies in proportion to the premiums thereon when an assessment was needed to pay losses (sec. 1941c). A policy was issued for a cash premium, the insured giving no note or obligation laying himself liable for losses. Subsequently the company appears to have become insolvent and passed into a receiver's hands. In an action on the policy the receiver insisted that it was *ultra vires,* as the

company had no power to issue policies for cash premiums and the insured had not subjected himself to assessments by a note or other written obligation. That the company was not empowered to write policies for cash was conceded by the court. But the court held, too, that on all property insured by the company, the cash policy holder was a member, that he was subject to assessments to meet losses and his policy was a valid and subsisting contract. The court said:

"We have just referred to the section which clearly contemplates and provides that all persons insured shall give their obligations to the company binding themselves, their heirs and assigns to pay their pro rata share of the necessary expenses and losses of the company. This was the proper way of doing business as indicated by the statute, and, where the business was so conducted, there could be no doubt but that the company was simply a mutual company, the mutual principle, as it is called, applying to the contract. The members of the company would all be bound to contribute to pay the losses sustained by the company in the strict legal sense of those words. Now, did the statute stop here, the argument would be well founded, that the insured in this case merely paid cash for his respective risk and was not bound to contribute further toward paying the losses of the company, but really stood upon the same footing as he would in a stock company. But section 1941 provides, among other things, that 'whenever the amount of any loss has been ascertained, which requires an assessment to be made, then the president and the officers of the corporation shall make an assessment, sufficient to pay such loss, upon all the property insured, according to the amount for which each several piece of property is insured, taken in consideration with the rate of premiums under which it may have' been classified.' A previous section gives the corporation power to classify property insured corresponding to the risk, and the

clause just quoted authorizes an assessment to pay losses and expenses upon the property insured without any exception. The effect of this provision is to make a cash policy holder a member of the company and liable to pay assessments for losses. We cannot perceive how it is possible to escape this conclusion, or to give the statute any other construction than to hold that it in terms makes the cash policy holder a member of the company, subject to assessment the same as though he had given his note or other obligation. . . .

"It is true the articles also provide that all persons insured in the company should give their obligations to pay a pro rata share of the necessary expenses and losses, and this was undoubtedly the plan on which it was supposed the business would be conducted, but still we have the provision which authorizes assessments upon all property insured, without any exception, sufficient to pay losses, and thus making the cash policy holder a member of the company and also making the corporation a mutual insurance company. The basis of the assessment is according to the statute, or may be, the property insured. The learned counsel for the receiver admits, if this is the correct construction of the statutes, that then the policy in question was not *ultra vires,* but was one which the company had power to issue, and we certainly think that the company had the power to issue it, and that a loss under it is a legal claim against the company. Although the sum of $17.50 was paid when the policy was issued, this would not exempt the insured from further liability to pay assessments. The statute under which the company was organized imposed this responsibility and the law became a part of the contract and one of the conditions of the policy, expressly so declared. Of course, that would have been the case in the absence of any such declaration in the policy, but it shows that the parties intended that resort should be had to the statute to determine their

rights and obligations, and, upon the statute, the conclusion seems irresistible that each person insured became a member of the company, and was liable to be assessed on the statutory basis for losses and expenses."

The Wisconsin case was cited with approval by an Ohio court as applicable to an Ohio Mutual Company like the one with which we are concerned (Mansfield & Hahn, Trustees, v. Wood et al., supra). In Trumbull, etc., Co. v. Horner, 17 Ohio St. 407, the action was by the company for an assessment on the deposit note of the defendant. It appears that the charter of the company required $100,000 to be subscribed before policies could be written and the petition was demurred to because it contained no allegation of compliance with this provision. A member was held to be estopped to deny the validity of his contract on the ground that the company had no authority to issue it.

The decree of the Supreme Court of Ohio recited in the petition under review, has some weight as authority on the question before us. The decree expressly found that all policy holders of certain years, both those who had given deposit notes and those who had not, were liable to assessment to the amount of five annual premiums. It does not appear that the court made a finding regarding action by the company fixing a rate of liability. Neither was it directly decided that such action was unnecessary. Nevertheless, if the company had not acted, it looks like the Supreme Court, in ruling that all policy holders could be assessed, thought the power to assess existed independently of a by-law on the subject. The decisions we have cited find support in cases and treatises dealing with the assessment of stockholders of corporations and the circumstances under which a person will be considered as a member, either because his contract of subscription for shares is regarded as complete or because of his having waived informalities and ratified the contract. [See Thompson, Priv. Corp.,

secs. 1138, 1166 and 1167 and the decisions cited in the footnotes.]

It is the duty of the governing body of a mutual company to fix the liability of members by uniform rule; but if this duty is neglected and the company becomes insolvent, it does not follow that policy holders who have sustained losses have no means of redress against members. In that contingecy a court of equity may enforce assessments by its decretal orders, or by a trustee or receiver acting under its direction. In determining the liability the court will, of course, be governed by the statutes of the State and not make it greater than five annual premiums. The case is analogous to that of holders of unpaid shares in a corporation. If the corporation becomes insolvent and the directors, during its solvency, have failed of their duty to compel the shareholders to pay in full so as to meet the company's liabilities, a court of equity will enforce payment pro rata, thus making up the fund for creditors. [Washington Sav. Bank v. Butchers & Drovers Bank, 107 Mo. 133, 142, 17 S. W. 644; Scovill v. Thayer, 105 U. S. 143; Thompson, Liability Stockholders, secs. 13 to 18; 3 Thompson, Priv. Corp., secs. 3386 and 3404.] And an equity court will likewise ascertain and collect the contingent liability of members of an insolvent mutual company, as the cases we have cited show. Any other interpretation of the Ohio statutes than the one we have adopted would lead to inequitable results, as is apparent from the decree of the Supreme Court of Ohio contained in the present record. The decree shows the contingent liability of some of the policy holders in the Union Mutual Company had been fixed by deposit notes. They, of course, could not escape payment of assessments on those notes, and it would be manifestly unjust to let a policy holder who had given no premium note escape, after he had enjoyed equal indemnity with other members who were bound.

The court therefore assessed all the policy holders equally.

The foregoing reasoning and authorities are fully applicable against the proposition that defendant is not liable because it did not agree in writing to bear any contingent liability. Its acceptance and retention of policies is the decisive fact. A member does not escape his contingent liability by failure to give a deposit note in accordance with the earlier statutes relating to mutual companies, or to sign an agreement in writing in accordance with the later statutes. This was decided expressly in Rundle v. Kennan, supra. The requirement of a note or written agreement should be considered as a statutory provision for a further guarantee to the company that the member's contingent liability will be paid.

As another reason why defendant is not exonerated even if it did not agree in writing to bear a contingent liability, plaintiff's counsel invoke the clause of the statute (3634) which says the same contingent liability incurred by original subscribers shall be agreed to in writing by each subsequent applicant for insurance who is not a merchant or manufacturer. Defendant is alleged to be both a merchant and a manufacturer. That expression in the statutes is obscure and it is unnecessary to interpret it at present.

Counsel for defendant say it was not bound by the decree of the Supreme Court of Ohio, because it was not a party to the suit. According to the petition defendant was a member of the Union Mutual Fire Insurance Company when the Ohio proceeding occurred; and if the court had jurisdiction of the subject-matter and the corporation, defendant is, in some measure, concluded by the decree on the theory that it was in privity with the company of which it was a member. We do not feel called on, in passing on the sufficiency of the petition, to attempt to determine the limit to which defendant

was bound by the Ohio judgment. Many authorities, indeed the great weight of authority it seems to us, hold members of companies which are wound up in equity for insolvency, are bound conclusively by the findings in the suit, even though not parties, as to the insolvency of the corporation, the amount of its debts and the rate of assessment that ought to be levied against its members. [3 Thompson, Private Corporations, sec. 3404; Thompson, Liability Stockholders, secs. 328 to 333; Hawkins v. Glenn, 131 U. S. 319; Glenn v. Liggett, 135 U. S. 533; Howard v. Glenn, 85 Ga. 238; Glenn v. Williams, 60 Md. 93; Hamilton v. Glenn, 85 Va. 901; Great West. Tel. Co. v. Gray, 122 Ill. 630; Mutual Fire Ins. Co. v. Phenix Furniture Co., 108 Mich. 170; Langley v. Garding, 74 Minn. 325.] Of course they are not bound if there is a statute requiring them to be brought in as parties. So far as the point in hand is concerned, defendant, whether he is absolutely concluded or not by the Ohio findings as to the necessity of an assessment on the shareholders to the amount ordered, is sufficiently bound by them to call for an answer. Defendant may show it was not a policy holder, or that there was no jurisdiction in the Ohio court over the corporation, or that the decree was procured by fraud, or that it has fully paid any liability it was under; and such like matters not determined in the Ohio suit. We do not undertake at present to say what it may show in defense and what it may not. Our opinion is that the petition states a cause of action. Therefore the judgment will be reversed and the cause remanded, with directions to the court to set aside the order sustaining the demurrer and to overrule it. All concur.